UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MINIA MEISELS, on her own behalf and
derivatively on behalf of STAMFORD EQUITIES,
LLC, ATERETH EQUITIES, LLC, OVERLEA
EQUITIES, LLC, 4910 EQUITIES, LLC, and
NEWLON EQUITIES LLC,

                    Plaintiffs,

           vs.

HENRY MEISELS a/k/a HENICH MORDECHEI
MEISLISH, JACOB MEISELS a/k/a YAAKOV
MEISLISH, and JOEL MEISELS a/k/a YOELI
MEISLISH,

                    Defendants,

STAMFORD EQUITIES, LLC, ATERETH
EQUITIES, LLC, OVERLEA EQUITIES, LLC,
4910 EQUITIES, LLC AND NEWLON
EQUITIES LLC,

                    Nominal Defendants.

Case No. 1:19-cv-04767-RRM-RML

**ANSWER AND CROSS-CLAIMS OF
DEFENDANT YAAKOV MEISLISH**

Defendant YAAKOV MEISLISH (a/k/a JACOB MEISELS) ("Jacob"), by and through

his undersigned attorneys, as and for his Answer and Cross-Claims to the Complaint of Plaintiff

MINIA MEISELS ("Plaintiff" or "Minia"), dated August 19, 2019 (the "Complaint"), alleges as

follows:

## NATURE OF THE ACTION

1.     Jacob admits that this action is for the appointment of a receiver, injunctive relief,

an accounting and damages with respect to five single purpose limited liability companies that

each own a residential apartment building in the Boro Park section of Brooklyn. Jacob admits that

Plaintiff is a British citizen residing in London, England. Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1 of the Complaint, and further but avers that he and his siblings, including Defendant Henry Meisels ("Henry"), were told by their parents on multiple occasions that they had purchased the Properties in or about the 1970s and have owned them directly or through other entities since that time.

2.    Jacob admits that the Properties have a sentimental as well as financial value to the Meisels family, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2 of the Complaint, except admits that it was common knowledge within the Meisels family that his parents had purchased and owned the Properties since in or about the 1970s in the manner alleged in the Complaint.

3.    Jacob denies each and every allegation contained in paragraph 3 of the Complaint to the extent it relates to Jacob, and otherwise admits the remaining allegations contained in paragraph 3 of the Complaint.

4.    Jacob admits that he and his brother Henry are not now and have never been owners of the Properties or the entities through which title is held, and further acknowledges his mother's 100% ownership of the Properties through the corporations that own the LLCs or other entities that hold title to the Properties. Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required. Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4 of the Complaint. However, Jacob further refers to his first Cross-Claim, paragraphs 129 through 135 herein.

5.    Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

7. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint, except admits that Henry has sent regular payments from the operations of the Properties to him in Israel in accordance with their parents' direction, and on occasion has invested money from the Properties in other real property at his father's direction and under his father's specific oversight.

9. Jacob admits that his father, Rabbi Vilmos Meisels, told Jacob he was very concerned about the incomplete and inaccurate nature of the rent rolls and other Property information provided by Henry and Joel, and that he had learned of reports by tenants that Henry and Joel were secretly pocketing rents without recording the payments in the books and records. Jacob denies each and every remaining allegation contained in paragraph 9 of the Complaint to the extent it relates to Jacob, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint.

10. Jacob admits the allegations contained in paragraph 10 of the Complaint.

11. Jacob respectfully refers the Court to the document referred to in paragraph 11 for its contents, denies each and every allegation contained in paragraph 11 of the Complaint to the extent it relates to Jacob, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 11 of the Complaint.

12. Jacob admits that he stopped receiving payments from the Properties, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 12 of the Complaint.

13.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 13 of the Complaint.

## PARTIES

14.     Jacob admits the allegations contained in paragraph 14 of the Complaint.

15.     Jacob admits the allegations contained in paragraph 15 of the Complaint.

16.     Jacob admits the allegations contained in paragraph 16 of the Complaint.

17.     Jacob admits the allegations contained in paragraph 17 of the Complaint.

18.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Complaint.

19.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the Complaint.

20.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 20 of the Complaint.

21.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21 of the Complaint.

22.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the Complaint.

## JURISDICTION AND VENUE

23.     Jacob admits the allegations contained in paragraph 23 of the Complaint.

24.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, denies that he committed any tortious act, and

otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 24 of the Complaint.

25.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 25 of the Complaint.

26.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26 of the Complaint.

## **FACTUAL ALLEGATIONS**

27.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

28.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint.

29.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

31.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint.

32.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

33.     Jacob admits, upon information and belief, the allegations contained in paragraph

5

33 of the Complaint.

34. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint, except admits that Rabbi Vilmos Meisels would direct Henry to use the proceeds of the Properties to purchase or invest in additional properties in the United States on behalf of Rabbi Vilmos Meisels and Plaintiff and to maintain books and records reflecting those transactions.

37. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint, except admits that he was party to conversations with his father and Henry regarding the arrangements alleged in the Complaint.

38. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint, and further refers the Court to the relevant documents in the public record for their contents.

39. Jacob admits that, following a near fatal cardiac arrest on January 19, 2017, Rabbi Vilmos Meisels was hospitalized for several weeks in St. Bart's hospital in London, England. During that time Jacob visited and saw Rabbi Vilmos Meisels heavily sedated and in and out of consciousness.

40. Jacob admits that, on January 23, 2017, Henry, Menachem Mendel Turim, and Mordechai Teitelbaum visited St. Bart's hospital in London, England while Rabbi Vilmos Meisels was in the coronary care unit. Jacob further admits that, in Jacob's presence, Henry told Rabbi

Vilmos Meisels that the pre-prepared, typewritten document Henry had brought with him was a traditional Jewish devise that would remove any Halachic impediment to Rabbi Vilmos Meisels, as part owner of the Properties, leaving his ownership interest to Plaintiff and was not intended to effectuate a genuine sale or transfer of title. Jacob further avers that, absent an appropriate Halachic document, the oldest son must immediately inherit 40% of Rabbi Vilmos Meisels' estate under traditional Halachic principles of law and the remaining 60% would go to the other sons (thereby leaving nothing to Plaintiff and her daughters). As a result, it is common for a parent to create a document sanctioned by Halacha to avoid the traditional Halachic priority. Jacob also avers that Rabbi Vilmos Meisels was very clear during his life that he wanted his share of the Properties and his other assets to go to his wife, and then she would devise them to their sons and daughters in accordance with their respective needs and entitlements after Plaintiff's death.

41. Jacob admits that he was present in the hospital room when Henry presented the document to Rabbi Vilmos Meisels and further avers that Jacob's mother and Jacob were sufficiently concerned about Rabbi Vilmos Meisels' confused state of mind concerning what Henry was saying and doing that Jacob urged that his own name be added to the document to make sure that that document was used in an appropriate Halachic manner and for its stated purpose. Jacob respectfully refers the Court to the document referenced in paragraph 41 for its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41 of the Complaint.

42. Jacob admits that Rabbi Vilmos Meisels signed the document that Henry had put in front of him from his hospital bed, and further avers that Rabbi Vilmos Meisels was sedated and very confused while signing the document. Jacob further avers that, between Rabbi Vilmos Meisels' release from the hospital and November 2018, Henry told Jacob several times in

conversation that the document was for Halachic purposes only and was not intended to transfer any interest in the Properties. Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 42 of the Complaint, except admits that he never paid any part of an alleged purchase price to his father or his estate and admits, upon information and belief, that Henry never paid any part of an alleged purchase price to his father or his estate.

43. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint.

44. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint.

45. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint, but avers that Rabbi Vilmos Meisels had expressed concern to Jacob in or around November 2018 (not November 2019) that Henry intended to use the hospital document to try to claim ownership of the Properties.

46. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint.

47. Jacob respectfully refers the Court to the document referenced in paragraph 47 for its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47 of the Complaint. Jacob further avers that Rabbi Vilmos Meisels disavowed the hospital document to Jacob.

48. Jacob respectfully refers the Court to the document referenced in paragraph 48 for its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48 of the Complaint.

49. Jacob admits that he immediately agreed to acknowledge in writing that the document signed in the hospital was for religious purposes only, and further avers that his father consulted a rabbinical lawyer who advised him that Jacob should sign a document gifting back to his father any ownership interests in the Properties that Jacob might have received under the hospital document in order to protect his parent's rights and interests in the unlikely event that a court of law would not understand the true intention behind the hospital document. Jacob denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 49 of the Complaint, except admits that Henry told him that he would not sign the document requested by his father.

50. Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 50 of the Complaint, and further avers that Rabbi Vilmos Meisels had another heart attack in December 2018, which ultimately proved to be fatal.

51. Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 51 of the Complaint, and further avers that Rabbi Vilmos Meisels was admitted to the hospital again in December 2018.

52. Jacob respectfully refers the Court to the document referenced in paragraph 52 for its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52 of the Complaint.

53. Jacob admits that Rabbi Vilmos Meisels passed away in February 2019, and that he left his entire interest in the Meisels Companies to his wife.

54. Jacob denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 54 of the Complaint.

55. Jacob respectfully refers the Court to the document referenced in paragraph 55 for

its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55 of the Complaint.

56. Jacob respectfully refers the Court to the document referenced in paragraph 56 for its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 56 of the Complaint.

57. Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 of the Complaint.

58. Jacob respectfully refers the Court to the document referenced in paragraph 58 for its contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58 of the Complaint.

59. Jacob respectfully refers the Court to the documents referenced in paragraph 59 for their contents, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59 of the Complaint.

60. Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 60 of the Complaint.

## ANSWERING THE CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Appointment of Receiver – Against All Defendants)

61. Jacob repeats and realleges the answers to paragraphs 1 – 60 above as if fully set forth herein.

62. Jacob admits that Plaintiff is the rightful owner through the Meisels Companies of the membership interests in the LLCs that own the Properties.

63. Jacob denies each and every allegation contained in paragraph 63 to the extent it

relates to Jacob, and neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required. Jacob otherwise denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 63 of the Complaint.

64.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 64 of the Complaint.

65.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65 of the Complaint.

66.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint.

67.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, admits that without court intervention the assets of the LLCs are at risk of being dissipated and lost and that Plaintiff and the individuals who she may direct will not receive any of the benefits to which they are entitled, does not object to the appointment of a receiver and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 67 of the Complaint.

68.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, does not object to the appointment of a receiver and otherwise denies knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in paragraph 68 of the Complaint.

69.     Jacob admits that Plaintiff's Complaint requests that a Receiver be appointed, and that such Receiver be given all powers necessary and usual in such cases for the protection, possession, control, management and operation of the LLCs and Properties during the pendency of this action, including but not limited to, the power to collect rents, negotiate rental agreements as necessary and disburse funds to pay expenses, and does not object to these requests.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief –Against All Defendants other than Jacob Meisels)

70.     Jacob repeats and realleges the answers to paragraphs 1 – 69 above as if fully set forth herein.

71.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, admits that without court intervention the assets of the LLCs are at risk of being dissipated and lost and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 71 of the Complaint.

72.     Jacob denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 72 of the Complaint.

73.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the Complaint.

74.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74 of the Complaint.

75.     Jacob denies each and every allegation contained in paragraph 75 of the Complaint to the extent it relates to Jacob, neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 75 of the

Complaint.

76.     Jacob denies each and every allegation contained in paragraph 76 of the Complaint to the extent it relates to Jacob and admits that without court intervention Plaintiff will suffer irreparable injury.

77.     Jacob neither admits nor denies those allegations in paragraph 77 of the complaint that consist of legal conclusions to which no responsive pleading is required.

### THIRD CLAIM FOR RELIEF

### (Accounting – Against All Defendants other than Jacob Meisels)

78.     Jacob repeats and realleges the answers to paragraphs 1 – 77 above as if set forth herein.

79.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint.

80.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Complaint.

81.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 81 of the Complaint.

82.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Complaint.

83.     Jacob denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint.

84.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 84 of the Complaint.

13

85.     Jacob neither admits nor denies those allegations in paragraph 85 of the Complaint that consist of legal conclusions to which no responsive pleading is required.

86.     Jacob neither admits nor denies those allegations in paragraph 86 of the Complaint that consist of legal conclusions to which no responsive pleading is required.

### FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – Against Defendant Henry Meisels)

87.     Jacob repeats and realleges the answers to paragraphs 1 – 86 above as if set forth herein.

88.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 88 of the Complaint.

89.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 89 of the Complaint.

90.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 90 of the Complaint.

91.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 91 of the Complaint.

### FIFTH CLAIM FOR RELIEF

### (Conversion – Against Defendants Henry Meisels and Joel Meisels)

92.     Jacob repeats and realleges the answers to paragraphs 1 – 91 above as if set forth herein.

93.     Jacob neither admits nor denies those allegations in paragraph 93 of the Complaint that consist of legal conclusions to which no responsive pleading is required.

94.     Jacob denies each and every allegation contained in paragraph 94 of the Complaint to the extent it relates to Jacob, neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and otherwise denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 94 of the Complaint.

95.     Jacob denies each and every allegation contained in paragraph 95 of the Complaint to the extent it relates to Jacob, neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 95 of the Complaint.

96.     Jacob neither admits nor denies those allegations that consist of legal conclusions to which no responsive pleading is required, admits that Plaintiff has suffered injury and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 96 of the Complaint.

### **CROSS-CLAIMS FOR RELIEF AGAINST DEFENDANT HENRY MEISELS**

97.     Jacob is a named Defendant in the above-captioned action and one of the eight children of Plaintiff Minia Meisels and the late Rabbi Vilmos Meisels.

98.     Jacob is an individual residing at Penina Street in Jerusalem, where he is the rabbi of an orthodox congregation and a dean of a rabbinical college.

99.     The Properties are located in the Boro Park section of Brooklyn, New York.

100.    This Court has personal jurisdiction over Cross-Claim Defendant pursuant to

N.Y.C.P.L.R. Sec. 301 and Sec. 302(a).

101.     This Court has diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

102.     Venue is proper in this District pursuant to 28 U.S.C. Sec. 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

103.     Upon information and belief, Cross-Claim Defendant Henry Meisels is an individual residing at 7 Apta Way, Unit 101, Monroe, New York.

104.     Jacob expressly acknowledges his mother's ownership of 100% of the five New York corporations that own the LLC's that hold title to the five Properties purchased by his parents between 1969 and 1975.

105.     The Properties have been part of the Meisels family for Jacob's entire life. They are the business of the family, purchased in substantial part with the money Jacob's mother, Plaintiff, received from her mother after World War II, overseen by Jacob's father, Rabbi Vilmos Meisels, and managed on a day to day basis by various family members over the years.

106.     The Properties generate the funds that are the primary means of support of Plaintiff, as well as Jacob. At the direction of Rabbi Vilmos Meisels and Plaintiff, for many years Rabbi Vilmos Meisels and Plaintiff received $25,000 or $30,000 per month from the proceeds of the Properties for their support and Jacob received $10,000 per month from the proceeds for his support. In addition, they would receive substantial supplemental sums as they required, such as for weddings or other special occasions, to pay off a mortgage, to purchase other businesses or properties, for medical needs or travel and vacations. Now, however, in retaliation for Jacob's refusal to endorse his false claims of ownership, Henry has cut off all payments to both Plaintiff

and Jacob. He has done so even though the document he relies upon to support his claim expressly requires that "the sending of money from one country to another will all remain and continue as it was until now as long as one of the parents is still alive."

107.     The Properties are also the inheritance that Jacob's parents have told Jacob and his siblings over the years will be theirs following the deaths of Rabbi Vilmos Meisels and Plaintiff.

108.     Defendant Henry Meisels is not now and has never been the owner of any of the Properties.

109.     Defendant Joel Meisels is not now and has never been the owner of any of the Properties.

110.     When Henry lost a small fortune some years ago in a series of disastrous investments, Rabbi Vilmos Meisels allowed him to work at the Properties in the family business to give him an income.

111.     It is common knowledge within the Meisels family that Rabbi Vilmos Meisels also directed Henry to invest some of the net proceeds of the Properties in various new ventures and properties, and Jacob participated in conversations with both Rabbi Vilmos Meisels and Henry in which such matters were discussed. For the past several years, at the direction of his parents, the net proceeds of those new investments have been divided into three parts every month: one third to Plaintiff and Rabbi Vilmos Meisels, one third to Henry as a management fee, and one third to support Jacob in Israel where he is a practicing rabbi and teaching in a Talmudic college.

112.     On January 19, 2017, Rabbi Vilmos Meisels suffered a severe heart attack. He was hospitalized and was in a comatose state for several days.

113.     On January 23, 2017, just after Rabbi Vilmos Meisels was coming out of the coma, Jacob was present in his father's hospital room in St. Bart's Hospital in London, England when

Henry insisted that Rabbi Vilmos Meisels sign a Hebrew document regarding the five Properties.

114.     Rabbi Vilmos Meisels was lying in bed in the coronary care unit, heavily medicated and confused. He could not remember what had been said from one minute to the next, was constantly repeating himself, was saying things that were incomprehensible, and required questions to be asked again and again. It was obvious that he was not capable of thinking clearly at the time, much less read a legal document or make any competent decision regarding any disposition of his property.  Nonetheless, Henry put the document on the table near the hospital bed, put a pen in his father's hand, and told him to sign it at a place Henry pointed to. As the document reflects on its face, Rabbi Vilmos Meisels did not even understand that he was supposed to sign his name and Henry made him do it again on the bottom of the document. In Jacob's presence, Henry told Rabbi Vilmos Meisels that the document was a traditional Jewish device that allowed Rabbi Vilmos Meisels, as a part owner of the Properties, to leave his ownership interest to Plaintiff for eventual distribution to their children and was not intended to transfer any interest in the Properties.

115.     Plaintiff, who was also present in the room although in a state of distress, told Jacob that she did not understand what Henry was doing and urged Jacob to ask that his name also be on the document.  Jacob therefore insisted that Henry add his name to the document, so that he could make sure that the document would only be used in an appropriate Halachic manner for its stated Halachic purpose and for no other purpose.

116.     Under traditional Halachic principles of law, absent an appropriate Halachic document, the oldest son must immediately inherit 40% of the father's estate upon the father's death and the remaining 60% must go to the other sons, even while the mother is still living, to the detriment of the mother and any daughters in the family.  As a result, it is common in ultra-

observant Jewish circles for a parent to create a document in a manner sanctioned by Halacha in order to render inapplicable the strict Halachic priority in favor of the eldest son and to the detriment of the female members of the family.

117.     Rabbi Vilmos Meisels was very clear during his lifetime that he wanted his children to inherit his share of the Properties after Plaintiff's death.

118.     Between Rabbi Vilmos Meisels' release from the hospital and November 2018, Henry told Jacob several times in conversation that the document was for Halachic purposes only and was not intended to transfer any interest in the Properties.

119.     Rabbi Vilmos Meisels told Jacob that when he left the hospital and learned about the document that Henry had put in front of him to sign, he questioned Henry who reassured him and the rest of the family that the document was solely for Halachic purposes.

120.     After Rabbi Vilmos Meisels became aware that Henry was claiming that the document was a binding transfer of ownership, he reached out to Jacob to ask him to sign a written acknowledgment that the document from the hospital was merely for Halachic purposes, and told him that he had asked Henry to do so as well.  Henry told Jacob that he refused to do so.  Jacob signed the acknowledgement.

121.     Following his refusal to acknowledge the document was for Halachic purposes only, Henry told Jacob that he had earned the right to own the Properties through his hard work, and that he had decided to try to enforce the document.

122.     At the request of Rabbi Vilmos Meisels, Jacob signed a written document gifting to his father any ownership rights he might have received under the hospital document.  Henry refused to do so.  Instead, Henry offered to pay Jacob $250,000 to sign a fraudulent backdated document stating that Jacob had gifted to Henry any ownership rights he might have received

under the hospital document, thereby rendering inapplicable Jacob's gift to his father, and for Jacob's cooperation in supporting his claim to ownership of the Properties.

123.     At that point, Jacob had grown concerned about the continuation of the monthly payments he was receiving in Israel. He did not respond to Henry's request.

124.     Upon learning that Jacob would not cooperate with his false claim to the ownership of the Properties, Henry indeed stopped sending the monthly payments to Israel. Jacob relied on those payments to support himself.

125.     When Jacob confronted Henry about the payments, Henry confirmed that he was trying to punish Jacob for not supporting his claim. Jacob told Henry during this conversation that Jacob had made a recording of his hospital visit with their father, and that it was clear that their father was heavily medicated and not in a state of mind to conduct business. Henry refused to back down, stating that his friends from Kiryas Joel would support his account of the hospital visit with Rabbi Vilmos Meisels and contradict the recording.

126.     Henry's claim that he acquired ownership of the Properties for himself through the hospital document or otherwise is completely false.

127.     Rabbi Vilmos Meisels was apoplectic when he learned that Henry was claiming that his father sold or gave him the Properties and thereby disinherited his wife, Plaintiff, and his other children. Rabbi Vilmos Meisels flew to the United States and confronted Henry, and then retained attorneys to protect his wife, Plaintiff, and his family against Henry's claim.

128.     Jacob does not wish to be part of this lawsuit, or to litigate with his own mother regarding property that unquestionably belongs to her.

## **FIRST CROSS-CLAIM FOR RELIEF AGAINST DEFENDANT HENRY MEISELS**

### **(Declaratory Judgment)**

129.    Jacob repeats and incorporates by reference the allegations contained in paragraphs 97 through 127 as if set forth fully herein.

130.    Henry's claim that he acquired ownership of the Properties for himself through the hospital document or otherwise is completely false.

131.    The Properties, through the corporations that own the LLCs that hold title to the Properties, are owned by Plaintiff.

132.    Henry has intentionally, wrongfully, and without justification interfered with and is continuing to interfere with Plaintiff's ownership of the corporations or LLCs owning the entities which hold title to the Property and, through them, the LLCs and the Properties.

133.    Jacob does not wish to be a part of Henry's attempt to perpetrate a fraud.

134.    Jacob has no adequate remedy at law other than this form of action to have his rights determined as to the matters set forth here.

135.    Accordingly, Jacob is entitled to and demands a declaratory judgment finding Plaintiff to be the lawful owner of the Properties, by and through the corporations and LLCs that own or hold title to the Property.  In the unlikely event, however, that the hospital document is found on some basis to evidence a valid transfer to Henry and Jacob, Jacob is entitled to and demands a declaratory judgment finding Henry and Jacob each to be a 50% owner of their father's share of the Properties, then effectuating an assignment of Jacob's ownership interest to Plaintiff, and finding that Plaintiff is the majority owner of the Properties based on the fact that the assigned interest, together with Plaintiff's own interest in the Properties which were never transferred, amount to more than 50% of the ownership interests in the Properties.

## SECOND CROSS-CLAIM FOR RELIEF AGAINST DEFENDANT HENRY MEISELS

### (Common Law Indemnification and Contribution)
### (Against Defendant Henry Meisels)

136.    Jacob repeats and incorporates by reference his response to the allegations contained in paragraphs 97 through 135 as if set forth fully herein.

137.    Jacob's involvement in this action is a result of Defendant's attempt to perpetrate a fraud.

138.    Jacob was unaware of the "Sales Agreement" until Henry presented it for signature at Rabbi Vilmos Meisels' hospital bedside.

139.    Jacob did not orchestrate, participate, or cooperate with Henry's fraudulent scheme to gain ownership of the Properties.

140.    Henry did not ask Jacob to sign on to the "Sales Agreement" or request that Jacob's name be added to the "Sales Agreement" at any time prior to Rabbi Vilmos' hospitalization in January 2017.

141.    Jacob did not himself ask Henry to allow Jacob to sign on to or have his name added to any such agreement at any time prior to Rabbi Vilmos' hospitalization in January 2017.

142.    Henry did not ask Jacob to sign on to the "Sales Agreement" or request that Jacob's name be added to the "Sales Agreement" at any time prior to Rabbi Vilmos' signing said agreement on January 23, 2017.

143.    Jacob requested that his name be added to the Agreement only shortly before Rabbi Vilmos signed said agreement on January 23, 2017. Jacob made this request strictly out of concern for his parents' interests in the ownership of the Properties, and later, after Henry took the position that the document was a real transfer, Jacob, at his father's request, gifted back to his parents his 50% ownership interest under the hospital document.

144.    Jacob does not wish to litigate against his mother.

145.    Jacob has already incurred and now faces further legal fees and other costs flowing from Henry's efforts to fraudulently and deceptively enforce the "Sales Agreement" signed by their deathly-ill father against their mother.

146.    To the extent that Jacob faces such costs and fees, or any further costs or expenses incurred because of Jacob's efforts to remediate Henry's fraudulent use of the Sales Agreement, equity demands that Henry indemnify Jacob against any such financial liability and/or expense.

147.    To the extent that Jacob is ultimately found liable to Minia Meisels or any other party as a result of his signature on the "Sales Agreement" now being fraudulently used by Henry, equity demands that Henry indemnify Jacob against any such financial liability and/or expense.

148.    If the Plaintiff recovers against Jacob or if Jacob should suffer any loss or adverse results in this action, the liability and recovery will have arisen in whole or in part because of the negligence, carelessness, unpaid obligation, recklessness and culpable conduct of Cross-Claim Defendant Henry Meisels, and Henry will and shall be liable to Jacob for all or part of such recovery, loss or adverse result and Jacob demands and is entitled to and, as a result thereof, Jacob is entitled to complete indemnification by Henry from any judgment entered against Jacob that Plaintiff may recover against Defendants, together with costs, disbursements and reasonable attorneys' fees.

WHEREFORE, Defendant Jacob Meisels demands judgment dismissing the claims against Jacob; declaring Plaintiff the owner of the Properties; granting Jacob all relief requested as stated in cross-claims for contribution and indemnification; for all attorneys' fees, costs and disbursements of this action; and for such further relief as the Court deems just and proper.

Dated: New York, NY
      November 7, 2019

KRAUSS PLLC

By:_____
      Geri S. Krauss, Esq.
      gsk@kraussny.com

41 Madison Avenue, Suite 4102
New York, NY 10010
Telephone: 914-949-9100
*Attorney for Defendant Jacob Meisels*