UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x
MINIA MEISELS, on her own behalf and
derivatively on behalf of STAMFORD
EQUITIES, LLC, et al.,
                                            **MEMORANDUM & ORDER**

                    Plaintiffs,             19-CV-4767(EK)(RML)

          -against-

HENRY MEISELS a/k/a HENICH MORDECHEI
MEISLISH, JACOB MEISELS a/k/a YAAKOV
MEISLISH, and JOEL MEISELS, a/k/a
YOELI MEISLISH,

                    Defendants.
-----------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Minia Meisels, a British citizen residing in

London, brings this action for monetary and injunctive relief

against three relatives:  her sons Henry and Jacob, and Henry's

son Joel.  She alleges, among other things, that Henry and Joel

have taken control of certain Brooklygn properties that are

rightly hers and converted the rental income from those

buildings to their own use.  Her complaint asserts causes of

action for breach of fiduciary duty and conversion and seeks the

appointment of a receiver, injunctive relief, and an accounting.

          Plaintiff now moves for partial judgment on the

pleadings under Federal Rule of Civil Procedure 12(c).  She

seeks a declaration that the contract pursuant to which Henry

and Joel purportedly obtained the properties is void, and asks

the Court to dismiss three of their affirmative defenses that are "based on" on that agreement.  Plaintiff's Motion at 2, ECF No. 74.

One of the three defendants — Jacob — has sided with Plaintiff throughout this litigation, despite appearing on the other side of the caption.  He now brings cross-claims against Henry for indemnification and contribution for costs incurred in defending this action, as a well as for declaratory relief (against Henry and Joel) regarding ownership of the properties. Jacob Meisels's Answer ¶¶ 129-48, ECF No. 21.

In addition, after Plaintiff filed this motion, I raised questions — sua sponte — about Jacob's citizenship and residence, and ordered Plaintiff to show cause why the action should not be dismissed for lack of diversity jurisdiction given the indications that Jacob lives abroad, alongside Plaintiff. Order to Show Cause, ECF No. 99.

Having reviewed the parties' submissions, I conclude that the presence of Jacob as a defendant in this action defeats the Court's diversity jurisdiction.  Rather than dismiss the case, however, I grant Plaintiff's request to drop Jacob as a party under Rule 21 of the Federal Rules of Civil Procedure.  I therefore dismiss Jacob's cross-claims.

As for Plaintiff's motion for judgment on the pleadings, I determine that the motion should be recharacterized

as one to strike under Rule 12(f).  Having recharacterized it as such, I grant Plaintiff's motion.

## I. Background

This case is, at its core, a dispute between a mother (Minia) and her son (Henry) over which of them is the lawful owner of the family's rental properties.  That question turns in significant part on the validity of a contract that purported to convey the properties from Minia Meisels's husband, Vilmos, to Henry and his brother Jacob.  The contract in question is titled "Sale Deed and Agreement" and is dated January 23, 2017.  Hirsch Declaration at Exhibits A-C, ECF Nos. 77-1, 77-2, & 77-3 (Henry and Joel's translation of the Sale Deed and Agreement and related documents executed contemporaneously) (collectively, "Defs.'s Transl."); Sullivan Declaration at Exhibit D, ECF No. 75-4 (Plaintiff's translation of the same) ("Pl.'s Transl.").

Although the complaint names two other defendants besides Henry, neither are the focus of this litigation.  Jacob — Plaintiff's son and Henry's brother — seeks a declaration that Plaintiff is "the lawful owner" of the properties and "ask[s]" that her motion be granted, despite being a beneficiary of the Sale Deed and Agreement.  Jacob Meisels's Answer ¶ 135; Jacob Meisels's Opposition Br. at 10, ECF No. 78.  Joel — Henry's son — manages the properties with Henry, but has no apparent ownership stake of his own.

Though the current dispute may be fairly simple, the events leading up to it are complex. I set out the relevant background below. All facts alleged in Henry and Joel's answer are accepted as true for purposes of this motion. *See, e.g.*, *United States v. E. River Housing Corp.*, 90 F. Supp. 3d 118, 124 n.4 (S.D.N.Y. 2015) (for purposes of a motion to strike, "the Court assumes as true the allegations in Defendant's Answer"). I also consider certain documents that were incorporated into the pleadings by reference, such as the Sale Deed and Agreement itself and related records. *See, e.g.*, *Neo4J v. PureThink, LLC*, 480 F. Supp. 3d 1071, 1075-76 (N.D. Cal. Aug. 20, 2020) ("On . . . a motion to strike, a court may consider the pleadings as well as documents that are . . . incorporated by reference when their authenticity is not contested.").

\*     \*     \*     \*     \*

Plaintiff commenced this lawsuit following the death of her husband, Rabbi Vilmos Meisels, in 2019. Vilmos was Henry and Jacob's father; he and Minia remained married until his death. At some point during the marriage, the Meisels family acquired — directly or indirectly — five rental buildings, which Plaintiff alleges were worth over $100 million, collectively, in 2017. Henry and Joel assumed management of the properties while the other parties lived overseas. As counsel for Henry and Joel acknowledged at oral argument, Henry shared the proceeds of the

business with Vilmos and Jacob while Vilmos was alive.
Transcript dated March 10, 2021 17:22-18:3, 23:9-13, ECF
No. 107. Sometime after Vilmos died, however, Henry stopped
making these payments. *Id.* at 17:22-18:3.

This led to the instant lawsuit. Plaintiff contends
that Henry has no right to keep the rental proceeds because he
does not own the properties. Henry and Joel, however, claim the
properties belong to Henry. Their position is predicated
primarily on the contract referenced above — the 2017 Sale Deed
and Agreement between Henry, Jacob, and Vilmos, whereby Vilmos
purported to sell "all of his shares that he has in [the]
properties" to Henry and Jacob for $15 million dollars. Defs.'s
Transl. Ex. A ¶ B, Ex. B at 1; *see also* Pl.'s Transl. at 7, 9
(materially similar translation).[1]

Minia, however, argues that the Sale Deed and
Agreement did not operate to transfer ownership of the
properties to Henry and Jacob. She contends that this is so
because, *first*, Vilmos did not own the properties personally,
and thus could not validly transfer them through a contract he
purportedly executed in his individual capacity. Instead, Minia
alleges that the properties are owned through various

---

[1] Another document confers the fifth property as an "absolute gift" to
Henry for "sav[ing]" the properties, presumably by managing them while
Henry's relatives were overseas. *See* Defs.'s Transl. Ex. C at 2; Pl.'s
Transl. at 13 (translating it as a "complete" gift).

corporations and limited liability companies and that she, not Vilmos, maintained majority control of these entities at all relevant times.  *Second*, Minia argues that the Sale Deed and Agreement is void on its face under New York's Statute of Frauds and common law.

Plaintiff's first contention — regarding Vilmos's authority (or lack of authority) to transfer the properties — involves disputed questions of fact that render it inappropriate for resolution at this stage.  Plaintiff's second argument, however — that the contract is void under the Statute of Frauds and other New York State contract law principles, for reasons apparent on the face of the document — is ripe for consideration.

This argument centers on two provisions of the Sale Deed and Agreement.  Those provisions are:

▪ First, the contract requires Henry and Jacob to make payment "thirty days" from the date on which Vilmos "gives handwritten notice," or "after the life of [Vilmos]."  Defs.'s Transl. Ex. A ¶ E; Pl.'s Transl. at 7 (materially similar translation). But it goes on to state that "delaying payment can in no way retract from the validity of this sale."  Defs.'s Transl. Ex. A ¶ D; *see also* Pl.'s Transl. at 7 (translating this clause to mean that "delay in the payment cannot derogate from the validity of this sale at all").  Minia argues that in light of

these provisions, Henry has no binding obligation to provide consideration in exchange for the properties.

- Second, the contract purports to limit the universe of people who can enforce the payment obligation to one: Vilmos personally, even after his death. It says the payment obligation is "only to [Vilmos] himself, not to any of his descendants or relatives." Defs.'s Transl. Ex. A ¶ G; Pl.'s Transl. at 7 (translating this clause to mean "the giving of the aforesaid undertaking . . . is only to the first party personally and not to any of the descendants of the first party [Vilmos], and not to any of his relations."). Plaintiff reads this provision to mean that, following Vilmos's death, there is no surviving person or entity who can enforce the contract.

Henry and Joel dispute these interpretations of the Sale Deed and Agreement. They do not, however, contest many other facts underlying Plaintiff's claim — namely, that Henry and Joel have control over the properties at issue; that they have shared no rental income therefrom with Minia or Jacob since 2019; and that they have not submitted any monies that might go towards the purchase price to escrow. Transcript dated March 10, 2021 at 17:22-18:3, 23:9-13.

## II. Jurisdiction

The complaint poses two jurisdictional questions: first, whether Jacob's presence in the action defeats this Court's subject matter jurisdiction (as noted above); and second, whether Plaintiff has standing to challenge the validity of the Sale Deed and Agreement, given that she is not a party to the contract itself. I address these arguments in turn.

### A. Diversity Jurisdiction

Given Jacob's statement that he resides abroad, *see* Jacob Meisels's Declaration in Support of Motion to Appoint Receiver ¶ 4, ECF No. 44 ("I reside and teach in Jerusalem."), I ordered Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. As set forth below, I conclude that Jacob's status as a defendant deprives the Court of diversity jurisdiction. To preserve jurisdiction, however, I grant Plaintiff's request to dismiss Jacob as a party from this action. Jacob consents. Declaration of Yaakov Meislish ¶ 5, ECF No. 101-2 ("Jacob Decl.") ("I hereby consent to the immediate dismissal of the action against me.").

District courts possess original jurisdiction over actions between "citizens of a state and citizens or subjects of a foreign state," and between "citizens of different States and in which citizens of a foreign state are additional parties." 28 U.S.C. § 1332(a)(2), (3). Diversity jurisdiction does not

exist, however, "where on one side there are citizens [of a State] and aliens and on the opposite side there are only aliens." *Univ. Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002). This rule defeats complete diversity here because Plaintiff is a U.K. citizen domiciled in London, and Jacob is a U.K. — and possibly also U.S. — citizen domiciled in Israel. Declaration of Minia Meisels ¶ 3, ECF No. 101-1 ("Pl. Decl.") ("I am a British citizen residing in London, England."); *see also* Jacob Decl. ¶¶ 1-3 (Jacob attests that he was born abroad, resides in Israel, is a U.K. citizen, and "believes" he became an American citizen at birth).

Plaintiff does not contest that Jacob's citizenship, if counted on the defendants' side, defeats complete diversity under Section 1332. Nor could she: the fact that Jacob was domiciled abroad when this litigation commenced defeats subject matter jurisdiction, regardless of his U.S. citizenship status.[2]

---

[2] Assuming Jacob was not a citizen of the United States, his presence as a defendant would violate the rule precluding jurisdiction "where on one side there are citizens [of a State] and aliens and on the opposite side there are only aliens." *Univ. Licensing Corp.*, 293 F.3d at 581. And if Jacob was a citizen of the United States (as he suspects), his status as a dual citizen domiciled abroad would render him stateless for purposes of diversity jurisdiction. *See, e.g., Creswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990) ("United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which suit persons are parties."); *United Torah Educ. & Scholarship Fund, Inc. v. Solomon Capital LLC*, No. 13-CV-3619, 2014 WL 4058486, at *4 (S.D.N.Y. Aug. 14, 2014) (dismissing for lack of diversity jurisdiction because one of several defendants was a U.S. citizen domiciled abroad, even though complete diversity otherwise existed).

Thus, the case cannot proceed in this Court if Jacob's citizenship is counted.

Plaintiff argues that Jacob is a "nominal" party whose citizenship does not count for diversity purposes. As a fallback position, she requests that if Jacob does not qualify as a nominal party, the Court should dismiss him from the case under Rule 21. *See* Pl. Decl. ¶ 10 ("If the Court has any questions regarding the jurisdictional implications of my decision to name Jacob as a nominal Defendant, then I respectfully request that this action immediately be dismissed against Jacob."). Alternatively, she asks that I realign Jacob as a plaintiff. For the reasons set forth below, I conclude that Jacob's citizenship counts toward (and defeats) diversity jurisdiction, but that he is not an "indispensable party" under Rule 19, and he thus can be dismissed at Plaintiff's request. I decline to realign him as a plaintiff and instead dismiss him from the case.

1.  Whether Jacob is a Nominal Party

Plaintiff first argues that Jacob is a "nominal" party whose citizenship does not count for purposes of diversity jurisdiction. It is well-settled that courts "must disregard nominal or formal parties and rest jurisdiction only upon citizenship of real parties to the controversy." *Purdue Pharm. L.P. v. Kentucky*, 704 F.3d 208, 218 (2d Cir. 2013) (quoting

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980)).  A party is "nominal" when "the party has nothing at stake in the litigation and no real, present claim for relief is being sought against the party."  *Greenhaus v. Gersh*, No. 19-CV-5266, 2020 WL 6799379, at *4 (E.D.N.Y. Nov. 19, 2020) (emphasis omitted).

Jacob's own conduct in this action belies the notion that he is a nominal party.  Counsel for Jacob argued not long ago that he "has to be [a defendant in this action] in order to protect his own interests."  Transcript dated March 10, 2021 at 12:3-4.  Jacob has also made other court appearances, filed an answer, brought cross-claims, and submitted several briefs in support of motions that Plaintiff filed in this case.  It is clear Jacob is not a nominal party to this litigation.  *Cf. Mt. Sinai Shopping Ctr., Inc. v. Liberty Mut. Ins. Co.*, No. 20-CV-46-PKC-SJB, 2020 WL 3526994, at *5 (E.D.N.Y. June 30, 2020) (filing answer and affirmative defenses was "inconsistent" with nominal-party status).

    2.    Whether Jacob is an Indispensable Party

Having concluded that Jacob's citizenship counts for diversity purposes, the question becomes whether to grant Plaintiff's request to dismiss him under Rule 21.  *See* Fed. R. Civ. P. 21 ("Misjoinder and Nonjoinder of Parties") (stating that "the court may at any time, on just terms, add or drop a party").  Henry and Joel argue that Jacob cannot be dropped

because he is an "indispensable party" under Rule 19. *See* Fed.
R. Civ. P. 19 ("Required Joinder"). With or without him, they
argue, the case cannot proceed.

This is an unusual argument, given the posture of this
case. Ordinarily, defendants raise Rule 19 defenses when a
party is *omitted* from the case, not when the sole plaintiff and
party in question affirmatively seek (and consent to) the
party's dismissal under Rule 21. Henry and Joel cite no case
where a court kept a defendant in the case under similar
circumstances, and the Court has located none.[3]

In any event, the indispensable-party analysis favors
dropping Jacob from the suit. Under Rule 19(b), a Court must
consider:

> (1) whether a judgment rendered in the person's absence
> might prejudice that person or parties to the action,
> (2) the extent to which any prejudice could be
> alleviated, (3) whether a judgment in the person's
> absence would be adequate, and (4) whether the plaintiff

---

[3] Henry and Joel cite *Envirotech Corp. v. Bethlehem Steel Corp.*, 729
F.2d 70, 76-78 (2d Cir. 1984). In that case, the Second Circuit affirmed the
lower court's dismissal of a counterclaim for lack of diversity jurisdiction,
over the request of the counterclaim-plaintiff to dismiss a diversity-
defeating counterclaim-defendant from the suit. While the procedural posture
in *Envirotech* is (somewhat) similar, the facts are not: unlike Jacob, the
diversity-defeating party there was "likely . . . the real party in interest"
to the counterclaim — a fact the district court deemed "paramount" in
deciding to dismiss the case. *Id.* at 74. Moreover, the counterclaim-
plaintiff in *Envirotech* had already commenced parallel lawsuits in state
court in anticipation of federal dismissal. *Id.* at 73. None of these
factors is present here.

would have an adequate remedy if the court dismissed the
suit.

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir.
2009).

None of these factors dictate that Jacob is
indispensable.  It goes without saying that Plaintiff and Jacob
would suffer little prejudice from his dismissal, given their
express desire to see him dropped.  As for Henry and Joel, the
only potential prejudice they posit is the possibility that
Jacob might bring another suit against them concerning the Sale
Deed and Agreement.  But Jacob has taken the position — in
writing — throughout this case that the Sale Deed and Agreement
is void.  As explained below, I agree.  After today, there is
little risk, as a practical matter, that Jacob will sue Henry
and Joel based on this contract, given that he will have
obtained the outcome he seeks.  The likelihood of prejudice to
Henry and Joel is minimal.

On the other hand, dismissal of this case would cause
harm — to both Plaintiff, and to the cause of judicial economy.
"[T]he parties have litigated for over two years, including
conducting discovery.  It would make little sense to require
them to start over in state court."  *Id.* at 160 (concluding
that party to disputed contract was not an indispensable party);
*cf. Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836
(1989) (holding that, where defect in diversity jurisdiction can

be cured, "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants awaiting judicial attention"). Moreover, some of Plaintiff's claims might be time-barred if the parties were sent to state court. *Cf. Kriss v. Bayrock Grp. LLC*, No. 10-CV-3959, 2016 WL 7046816, at *9 n.2 (S.D.N.Y. Dec. 2, 2016) (statute of limitations for conversion claims in New York is three years).

*          *          *          *          *

Weighing these factors, I conclude that Jacob is not an indispensable party under Rule 19. I decline Plaintiff's invitation to realign him as a plaintiff in this case, because doing so would not resolve the jurisdictional issues his presence creates. *See Cresswell*, 922 F.2d at 68 (stating that courts "lack [diversity] jurisdiction over a suit to which [United States citizens who are domiciled abroad] are parties"). I therefore grant Plaintiff's request to dismiss Jacob from the case under Rule 21.

B.    **Plaintiff's Standing**

Henry and Joel challenge Plaintiff's standing to contest the validity of the Sale Deed and Agreement on the

ground that she is not a party to the contract.[4]  Their argument

is based in New York state law — namely, the rule that one who

is "neither a party, an assignee, nor an intended third-party

beneficiary" of a contract "lacks standing to challenge the

validity of the contract."  *Decolator, Cohen & Diprisco v.*

*Lysaght, Lysaght & Kramer, P.C.*, 304 A.D.2d 86, 90 (1st Dep't

2003).  Courts have characterized this rule as one of

prudential, not constitutional, standing.  *See, e.g.*, *Toretto v.*

*Donnelly Fin. Sols., Inc.*, No. 20-CV-2667, 2021 WL 861138, at *9

n.3 (S.D.N.Y. Mar. 5, 2021) ("Non-parties to a contract other

than third party beneficiaries have been found to lack

prudential standing.").

    This prudential state-law rule does not apply here.

Plaintiff has brought no affirmative claim regarding the

validity of the Sale Deed and Agreement.  Her complaint sounds

in tort, not breach of contract; she claims that Henry has

converted proceeds that are rightfully hers to his own use, and

she points to evidence of her initial ownership interest and her

husband's will in support.  *See, e.g.*, Declaration of Plaintiff

---

[4] Henry and Joel raise this argument in a single sentence in their opposition brief, and never raised it at oral argument.  Accordingly, I need not resolve this argument. *See, e.g.*, *Sohc, Inc. v. Zentiz Food Sols. N. Am., LLC*, No. 14-CV-2270, 2014 WL 6603951, at *2 (S.D.N.Y. Nov. 20, 2014) (stating that a "single, conclusory, one-sentence argument is insufficient to raise an issue in the first instance") (internal quotations and citations omitted).  In the interest of completeness, however, I address this argument anyway.

Minia Meisels in Support of Motion for the Appointment of a
Receiver and Injunctive Relief, Ex. D at 5, 9, 13, ECF No. 36-4
(certificates of inspection for the owning LLCs bearing
Plaintiff's signature); Reply Declaration of Plaintiff Minia
Meisels, Ex. A at 3, ECF No. 50-1 (Vilmos's will provides that
"I hereby bequeath and give to my wife, [Minia Meisels], all my
property, both real estate and movable property . . . and/or any
other property without exception").  Instead, it is Henry and
Joel who put the validity of the Sale Deed and Agreement in
issue — by raising it as a defense to Plaintiff's tort claims.
Plaintiff is entitled to challenge that defense, notwithstanding
the usual bar on third-party standing.

This conclusion is necessary as a matter of logic.  It
would be absurd if a party could convert someone else's
property, then point to a contract — perhaps fabricated — with a
prior owner, and thereby preclude the rightful owner from
litigating the validity of the contract, even as an affirmative
defense raised by the alleged wrongdoer.[5]  Henry and Joel's
standing argument, therefore, is unavailing.

---

[5] The Second Circuit has held that non-parties to a contract may not
challenge the contract's validity under the Statute of Frauds.  *See
Countrywide Home Loans, Inc. v. Brown*, 223 F. App'x 13, 14 (2d Cir. 2007)
("[A] statute of frauds defense cannot be raised by a third party to the
contract at issue.").  But Plaintiff does not rely exclusively — or even
primarily — on the Statute of Frauds.  The crux of her argument is that the
Sale Deed and Agreement is void for lack of consideration under basic
principles of contract law.  Thus, *Countrywide Home Loans, Inc.* (which Henry
and Joel do not cite) does not control here.

### III. Motion to Strike

I turn next to Plaintiff's motion under Rule 12(c). She moves to dismiss Henry and Joel's affirmative defenses based on the Sale Deed and Agreement and asks for a declaration that the contract is void. Henry and Joel contend that this motion is procedurally improper. They argue that it should have been brought as a motion to strike under Rule 12(f), and that when considered as such, it is untimely and meritless. For the reasons explained below, the Court agrees that the motion invokes the wrong rule of civil procedure. Construed properly, however, I deem the motion timely, and grant it.

#### A.      Procedural Arguments

Although Plaintiff seeks two forms of relief in her motion, both seek the same end — namely, to preclude Henry and Joel from relying on the Sale Deed and Agreement in defense of their claims. Henry and Joel assert defenses based on the Sale Deed and Agreement in both their answer and in opposition to the instant motion. The presence of these defenses in their answer, however, is critical. Without having asserted them there, Henry and Joel would be unable to raise these defenses at trial. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."); *Lakah v. UBS AG*, No. 07-CV-2799, 2014 WL 5475294, at *1 (S.D.N.Y. Oct. 30, 2014) ("If a defendant fails to plead an

affirmative defense in his answer, it is considered waived and is excluded from the case.").  Striking these defenses would have the same effect as declaring the Sale Deed and Agreement void.  I therefore treat Plaintiff's two requests as one.

These defenses appear (somewhat obliquely) in three parts of Henry and Joel's answer:  they allege that "Rabbi Vilmos Meisels signed [the Sale Deed and Agreement and related documents] with the full intent . . . of transferring the Properties to Henry" (Second Affirmative Defense); Henry "is the owner of the Properties," "[p]ursuant to valid and binding documents" (Third Affirmative Defense); and the "claims in the Complaint should be dismissed based on documentary evidence" (Sixth Affirmative Defense).  Henry and Joel Meisels's Answer at 16-17, ECF No. 20.  It is apparent, from both the pleadings and the submissions filed thereafter, that these defenses are largely premised on the validity of the Sale Deed and Agreement, even if their language is broad enough to include other defenses as well.  Plaintiff's motion to strike, therefore, seeks to dismiss these defenses only *to the extent* they are based on the Sale Deed and Agreement — not in their entirety.  *See, e.g.*, *Fed. Dep. Ins. Corp. v. Ornstein*, 73 F. Supp. 2d 277, 287 (E.D.N.Y. 1999) (granting motion to strike affirmative defense "to the extent" that it relies on a particular argument).

1.   Rule 12(c) and Rule 12(f)

The first question is whether this motion should have been brought under Rule 12(c) or 12(f) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "a party may move for judgment on the pleadings," provided they do so "after the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). By contrast, Rule 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either "(1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f).

Henry and Joel are correct that this motion should have been brought under Rule 12(f). This is because motions under Rule 12(c) must result in a "judgment," which is defined elsewhere in the Federal Rules as "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a); *see also id.* 54(b) (discussing judgment with reference to "a claim, counterclaim, crossclaim, or third-party claim"). This definition reflects "[t]he historic rule in the federal courts" prohibiting "piecemeal disposition of litigation" by "permit[ting] appeals only from final judgments except in those

special instances covered by statute." Fed. R. Civ. P. 54 advisory committee's note to 1946 amendment.

Because Plaintiff's request would not result in a judgment, Rule 12(c) is an improper vehicle for seeking the requested relief. *Cf. Kenall Mfg. Co. v. Cooper Lighting LLC*, 354 F. Supp. 3d 877, 893 (N.D. Ill. 2018) (Rule 12(c) does not permit "piecemeal judgment on part of a claim" — i.e., "some but not all elements of a single claim"). This principle is especially applicable here, given that Plaintiff's motion seeks the dismissal of affirmative defenses in Henry and Joel's answer. *See Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12-CV-5105, 2014 WL 3950897, at *2 (S.D.N.Y. Aug. 13, 2014) (proper vehicle for seeking dismissal of affirmative defenses is Rule 12(f), not Rule 12(c)); *Mobile Med. Int'l Corp. v. Adv. Mobile Hosp. Sys., Inc.*, No. 2:07-CV-231, 2015 WL 6554887, at *2 (D. Vt. Oct. 29, 2015) (motion to dismiss affirmative defenses should be brought under Rule 12(f) because "Rule 12(c) generally applies to affirmative claims"); *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 300 n.1 (S.D.N.Y. 2011) ("Rule 12(f) permits a party to challenge the sufficiency of an affirmative defense, while Rule 12(c) permits a party to challenge the sufficiency of a claim or counterclaim"); 5C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1369 (3d ed. 2020) ("If a plaintiff seeks to dispute the legal sufficiency of

fewer than all of the defenses raised in the defendant's
pleading, he should proceed under Rule 12(f) rather than Rule
12(c) because the latter leads to the entry of a judgment").
Thus, Plaintiff's motion should be construed as one to strike
under Rule 12(f).

    2.   <u>Timeliness</u>

      Having construed Plaintiff's motion as one under Rule
12(f), I turn to Henry and Joel's contention that the motion (so
construed) is untimely.  While Rule 12(f) directs parties to
move to strike within twenty-one days after the challenged
pleading (here, Henry and Joel's answer) is filed, the Rule
grants courts discretion to excuse untimely filings.  *See* Fed.
R. Civ. P. 12(f) (allowing courts to strike defenses at any time
"on [their] own"); *Dixie Yarns Inc. v. Forman*, No. 91-CV-6449,
1993 WL 227661, at *4 (S.D.N.Y. 1993) ("Numerous courts have
held that the court's power to strike a defense on its 'own
initiative any time' allows it to consider untimely motions to
strike.").  Courts frequently do so.  *See, e.g.*, *Saratoga
Harness Racing, Inc. v. Veneglia*, No. 94-CV-1400, 1997 WL
135946, at *3 (N.D.N.Y. Mar. 18, 1997) (construing Rule 12(c)
motion as one under Rule 12(f) and deeming it timely).  Given
the importance of this motion to the case, I will proceed to the
merits of Plaintiff's motion despite the late filing.

**B.    Merits of the Motion to Strike**

        To strike a defense under Rule 12(f) for legal
insufficiency, "(1) there must be no question of fact that might
allow the defense to succeed; (2) there must be no substantial
question of law that might allow the defense to succeed; and
(3) the plaintiff must be prejudiced by the inclusion of the
defense." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F.
Supp. 2d 1098, 111 (S.D.N.Y. 2005).  As with Rule 12(b)(6)
motions, the "sufficiency of a defense" on a 12(f) motion to
strike "is to be determined solely upon the face of the
pleading[s]. . . ."  *Houston v. Manheim-New York*, No. 09-CV-
4544, 2010 WL 744119, at *3 (S.D.N.Y. Mar. 31, 2010).  Here, the
pleadings include the Sale Deed and Agreement because it is
referenced therein.  *See, e.g.*, *Carruthers v. Flaum*, 365 F.
Supp. 2d 448, 454 (S.D.N.Y. 2005) ("It is well settled that on a
motion to dismiss, where the validity of contracts is
challenged, the court may review and consider the terms of the
contracts that were referenced in the pleadings."); *Neo4J*, 480
F. Supp. 3d at 1075-76 (on motion to strike, courts may consider
documents incorporated by reference in the pleadings).

    1.    Propriety of the Motion

        Motions to strike are "generally disfavored," *Connell
v. City of New York*, 230 F. Supp. 432, 438 (S.D.N.Y. 2002),
because they may result in the premature elimination of

allegations that could "later turn out to be of importance to the case," among other things, *Jain v. Brennan*, 18-CV-4446, 2019 WL 2451291, at *6 (S.D.N.Y. Apr. 25, 2019) (Aaron, M.J.) (internal quotations omitted).  Nevertheless, they should be granted where doing so will clarify the issues and streamline the case for trial.  *See, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) ("Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.") (internal quotations omitted).

      This is a case where a motion to strike could result in substantial efficiency gains.  And there are no "substantial questions" of law or fact that preclude resolution of Plaintiff's motion.  Plaintiff challenges the validity of the Sale Deed and Agreement under the Statute of Frauds and common law, and this legal challenge depends solely on the written terms of the document itself.  Moreover, Plaintiff would suffer prejudice if Henry and Joel were able to raise defenses based on the contract's validity at trial, given the importance of this document to the merits of the litigation.  *See Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) ("Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense."); *Specialty Minerals, Inc.*, 395 F. Supp. 2d at 114 (inclusion of

defense would cause prejudice by expanding discovery and the length and scope of trial).  Plaintiff's motion under Rule 12(f) is therefore proper.

   2.   Substantive Arguments

      Plaintiff's central claim is that the contract is void for lack of consideration under basic principles of contract law.  This problem arises, she argues, because the payment terms are so indefinite that the promise to pay is illusory.  She argues that this indefiniteness renders the contract unenforceable under both the common law and the Statute of Frauds.  I only consider the former.

      As noted above, the alleged indefiniteness arises from two parts of the document:  first, the Sale Deed and Agreement provides that payment is conditional — it is due only if Vilmos requests it, or if he dies.  Second, the agreement is highly unusual in that it provides explicitly that non-payment does not affect its enforceability — specifically, that "delaying payment can in no way retract from the validity of this sale."  And third, it states (again, unusually) that Henry's payment undertaking runs only to Vilmos himself, and not his "descendants or relatives" (even after Vilmos's death).  Taken together, these terms can be read to grant Henry unfettered discretion to decide when — or whether — to pay, and to preclude anyone from enforcing payment once Vilmos dies.

This renders the Sale Deed and Agreement illusory under elementary principles of common law. "Unless both parties to a contract are bound, so that either can sue the other for breach, neither is bound." *Oscar Schlegel v. Peters Cooper's Glue Factory*, 231 N.Y. 459, 462 (1921). Here, the contract binds Henry (and Jacob) to do nothing. They could withhold payment in perpetuity without breaching the contract. And if they do so past Vilmos's death (as they did here), their "obligation" to pay evaporates entirely. Such promises, which "in actuality [are] not promising anything," do not make for an enforceable contract. *Damato v. Time Warner Cable, Inc.*, 13-CV-0994, 2013 WL 3968765, at *5 (E.D.N.Y. July 31, 2013); *see* 1 WILLISTON ON CONTRACTS 4:27 (4th ed.) ("A promise by the grantee of land to pay a specified portion of the price when he or she shall elect to do so standing alone might be deemed illusory" absent, for example, a promise to pay interest at specified rates).

Henry and Joel argue that the Court should graft certain understandings onto the contract to preserve its enforceability. General principles of New York contract law might support that approach — including, for instance, by implying terms for the time of performance. *See Credit Suisse First Boston v. Utrecht-Am. Fin. Co.*, 80 A.D.3d 485, 488-89 (1st Dep't 2011) ("[A]n interpretation that renders a contract

illusory and therefore unenforceable is disfavored and enforcement of a bargain is preferred."). But as a real estate contract, the Sale Deed and Agreement is subject to the Statute of Frauds. N.Y. Gen. Ob. L. § 5-703(3) (contracts for the "devise of real property" must be "in writing"). And the Statute of Frauds requires that the essential (payment) terms of the contract itself be spelled out *in writing*. *See Walentas v. 35-45 Front St. Co.*, 20 A.D.3d 473, 474 (2005) ("To satisfy the statute of frauds, a memorandum evidencing a contract and subscribed by the party to be charged must designate the parties, identify and describe the subject matter, and state all of the essential terms of a complete agreement."); *Sabetfard v. Djavaheri Realty Corp.*, 18 A.D.3d 640, 641 (N.Y. 2005) (real estate contract contained all "essential terms" because it specified the terms of payment, among other things); *Behrends v. White Acre Acquisitions, LLC*, 54 A.D.3d 700, 701 (2d Dep't 2008) (contract was void for indefiniteness because it was ambiguous with respect to the amount of payment); *see also Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) ("Price or compensation are material terms in a contract requiring definiteness.").

This principle — that the payment terms appear in writing in the contract itself — limits the Court's ability to preserve the contract through favorable construction. Where (as

here) the Statute of Frauds governs the enforceability of the contract, "[t]he court may not write into the contract conditions the parties did not insert, by adding or excising terms under the guise of construction." *Brands v. Urban*, 182 A.D.2d 287, 290 (2d Dep't 1992); *see also id.* ("The rule is well settled that the writing evidencing the contract must, in order to satisfy the Statute of Frauds (see General Obligations Law § 5-703), state the entire agreement with such certainty that the substance thereof appears from the writing alone."); *Mentz v. Newwitter*, 122 N.Y. 491, 497 (1890) (the writing must contain "substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is"). Thus, the Statute of Frauds limits the Court's leeway to insert terms into the Sale Deed and Agreement, even if those terms would save it.

The interpretations Henry and Joel propose would require precisely what the Statute of Frauds forbids: making additions to the terms of the contract "under the guise of construction," rather than evaluating its terms on their face. *Brands*, 182 A.D.2d at 290.

First, Henry and Joel contend that the "delay" provision merely "makes money damages the remedy for delayed payment (or non-payment), rather than invalidation of the Agreement." *See* Defs.'s Supp. Br. at 2, ECF No. 97. But this

reading only proves that the promise to pay is illusory. By preventing "invalidation of the Agreement" (and thus resale to another buyer), the reading limits the remedies for nonpayment to one: a court order requiring Henry and Jacob to pay, despite the fact they have already shown an unwillingness to do so. This remedy is obviously meaningless. Without the ability to recover the properties, there is no way to enforce the payment obligation. The promise is thus illusory even under Henry and Joel's interpretation.

As to the question of enforceability after Vilmos's death, Henry and Joel argue that Vilmos's *estate* may seek payment even if no one else can. But it is far from obvious that an executor could enforce the Sale Deed and Agreement. That agreement is enforceable only by "Party A [Vilmos] himself," Defs.'s Transl. Ex. A. ¶ G; and the executor is not Vilmos himself. And the Sale Deed and Agreement explicitly states that Henry's obligations run only to Vilmos, and "not to any of his descendants or relatives." *Id.* It goes without saying that the executor could only enforce this obligation on behalf of Vilmos's "descendants or relatives," which the plain language of the document forbids. Nothing in the text of the document supports Henry and Joel's alternative reading; indeed, the plain language directly contradicts it.

Simply put, to adopt these arguments would be to stretch the contract's meaning beyond the four corners of its language, which the Statute of Frauds does not allow. The contract is illusory on its face, and none of the interpretations Henry and Joel advance can save it. Thus, the Sale Deed and Agreement is void.

Accordingly, Plaintiff's motion to strike is granted. Henry and Joel may not rely on the validity of the Sale Deed and Agreement in support of their defenses in this proceeding.

## IV. Conclusion

For the reasons stated above, defendant Jacob Meisels is dropped from this case and his cross-claims are dismissed. The Court construes Plaintiff's motion for judgment on the pleadings as one to strike under Rule 12(f) of the Federal Rules of Civil Procedure and grants the motion. The Second, Third, and Sixth affirmative defenses in Henry and Joel's answer are stricken to the extent they are based on the validity of the Sale Deed and Agreement.


SO ORDERED.

/s Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated:    May 13, 2021
          Brooklyn, New York